IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| James P. Hallberg, as Trustee of the Hallberg Revocable Trust, et al. ) ) ) Plaintiffs, ) ) v. ) ) ) American Agencies General Agencies, Inc., et al. ) ) ) Defendants. ) | No. 04 C 3245 Judge Mark Filip |

## MEMORANDUM OPINION AND ORDER

Plaintiffs James P. Hallberg, as Trustee of the James P. Hallberg Revocable Trust; Patricia L. Hallberg, as Trustee of the Patricia L. Hallberg Revocable Trust; and Casmira Lens, as Trustee of the James P. Hallberg Irrevocable Gift Trust and the Patricia L. Hallberg Irrevocable Gift Trust (collectively all "Plaintiffs"), are suing Defendants American Agencies General Agencies, Inc. (formerly known as Instant Insurance Holdings, Inc., successor in interest to certain interests of J. Gordon Gaines) ("AAGA"); Insure One Independent Insurance Agency LLC; Affirmative Insurance Holdings, Inc. (formerly known as American Agencies Holdings, Inc.); Thomas E. Mangold; M. Sean McPadden; and Katherine C. Nolan (collectively all "Defendants"). (D.E. 1.)[1] In their complaint (also, "Complaint"), Plaintiffs allege a federal securities fraud claim pursuant to Section 10(b)(5) of the Securities Exchange Act and SEC Rule 10(b)(5), 17 C.F.R. 240.10b-5 (Count I). They also allege three claims arising under Illinois law—namely, fraudulent misrepresentation (Count II), negligent misrepresentation (Count III),

---

[1] The various docket entries in the case are cited as "D.E. __."

and breach of fiduciary duty (Count IV). The case is before the Court on Defendants' Motion to Dismiss all counts of Plaintiff's Complaint ("Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. 3.) As explained below, Defendant's Motion is granted: the federal securities claim is dismissed without prejudice because of various pleading deficiencies. The state law claims are also dismissed without prejudice, as precedent directs, so that Plaintiffs may pursue them in an appropriate forum (such as the Illinois courts), if they choose to do so.

I. BACKGROUND FACTS[2]

Pursuant to an asset purchase agreement, on January 7, 2002, Insure One was formed, and Plaintiffs retained a 20% membership interest in the newly formed corporate entity. (D.E. 1 at 1, 3.)[3] The irrevocable trusts apparently were each 4.47 percent shareholders in Insure One, while each revocable trust was a 5.53 percent shareholder. (*Id.* at 1-2.) On January 16, 2002, after completion of the asset purchase agreement, James Hallberg ("Hallberg") signed an employment agreement with Insure One LLC, and he became an employee, indeed President, of Insure One

---

[2] The background facts are taken from Plaintiffs' Complaint (D.E. 1) and are assumed to be true, as precedent requires, for present purposes. The Court takes no position concerning whether any of the allegations are actually well founded.

[3] Explication of the facts is complicated by the fact that Plaintiffs refer without defining to "Insure One" (*e.g.*, D.E. 1, at 1-2); they also refer to "Insure One Independent Insurance Agency LLC" (*e.g.*, *id.* at 2); "Insure One LLC" (*id.* at 2-3); and "Insurance One LLC" (*id.* at 2). Plaintiffs do not meaningfully explain whether their references are meant to refer to different corporate entities or, as often appears to be the case, to the same entity. Plaintiffs also repeatedly refer to "the Company" (*e.g.*, *id.* at 3), which they do not define, but which seems to refer to Insure One LLC (and the various potential other names they use for that entity). The Court relates the background facts as best it can, and typically refers herein to "Insure One" and "Insure One LLC" as Plaintiffs appear to use those terms (and which may well refer to the same entity, also referred to as "the Company."). The Court also cites page numbers of the Complaint, as opposed to paragraphs, because Plaintiffs have numerous duplicative paragraph numbers in the Complaint.

LLC. (*Id.* at 3; D.E. 3, Ex. A at 42.) The employment agreement also allowed Plaintiffs to retain a put right ("Put Right"), which entitled them to unilaterally elect to sell their twenty percent interest in Insure One LLC in the event that Hallberg's employment was terminated. (D.E. 1 at 3.) The Put Right included a specific set of procedures to be followed to determine the amount Plaintiffs would receive for divesting themselves of their interest in Insure One. (*Id.* at 3-4.) This process, at least in part, was based on the financial performance of the company, including its revenues and billing fees. (*Id.* at 4.)

On March 7, 2003, Hallberg's employment was terminated without cause. (*Id.* at 3.) Thereafter (although the timeline is unclear as to when), Plaintiffs elected to exercise the Put Right. (*Id.*) In any event, Plaintiffs and Insure One attempted unsuccessfully to negotiate a mutually agreeable appraisal value. (*Id.* at 3-4.) Hallberg then requested year-end financial statements of Insure One, which were in the exclusive control of Defendants, to compute a proposed value of Plaintiffs' interest. (*Id.* at 4.) At the time he made his computation, Hallberg had in his possession preliminary financial statements for year end 2002 he had acquired before his employment was terminated. (*Id.*)[4] Despite repeated requests by Hallberg, Defendants refused to provide final year-end 2002 financial statements. (*Id.*) Consequently, Hallberg's proposed settlement and all negotiations relied only on the preliminary financial statements. (*Id.*) Ultimately, Plaintiffs (through Hallberg) and Defendants agreed on a purchase price (roughly $9,600,000) and executed a settlement agreement to transfer Plaintiffs' interest. (*Id.*; D.E. 3, Ex.

---

[4] Plaintiffs repeatedly refer to "preliminary year-end 2002 financial statements" and "final year-end 2002 financial statements." It appears, although Plaintiffs are often unclear about this, that Plaintiffs are attempting to state that Halberg had *pro forma* financials and not the audited ones.

B at 2.)

After the closing of the settlement negotiations, Hallberg "was informed by various parties that there were significant differences in the preliminary year-end 2002 financial statements he relied on to determine the value of the shares and the final 2002 financial statements." (D.E. 1 at 4.) In addition, on November 13, 2003 (over eight months after his termination), Hallberg learned that Insure One had merged with other "non-standard automobile subsidiaries" and together announced that they would file a registration statement for an initial public offering ("IPO") of the shares of the merged entity, to be known as Affirmative Insurance Holdings, Inc. ("Affirmative"). (*Id.*) The former Insure One was the largest revenue and profit maker in the new entity, comprising approximately seventy percent of Affirmative's net income. (*Id.* at 5.) Apparently, the maximum that could be raised from this IPO was $258,750,000. (*Id.* at 4.) (Plaintiffs do not allege how much money, if any, actually was raised.) Plaintiffs never received notice of the possibility of the merger or IPO prior to exercising the Put Right. (*Id.* at 5.) Plaintiffs allege that the information contained in the final 2002 financials and concerning the possibility of a merger and IPO was material, in that Plaintiffs would not have exercised the Put Right when they did, at the amount they did, had they known the information. (*Id.*)

II. STANDARD OF REVIEW

Defendants have moved to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6). "A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted." *Johnson v. Rivera*, 272 F.3d 519, 520-21 (7th Cir. 2001). When considering the motion, the court accepts all well-pleaded factual allegations in the complaint as true and draws all reasonable inferences from the

facts in the light most favorable to the plaintiff. *Arazie v. Mullane*, 2 F.3d 1456, 1465 (7th Cir. 1993). However, the court should not strain to find inferences not plainly apparent from the face of the complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Dismissal for failure to state a claim is not appropriate unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lee v City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In their Motion, Defendants also note the applicability of Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995, which also are germane. Those additional rules of federal law are discussed, as relevant, below.

III. <u>DISCUSSION</u>

    A. The Federal Securities Claim (Count I)

The Court will first, and primarily, address Defendants' motion to dismiss Plaintiffs' 10b-5 claim. Seventh Circuit precedent teaches that, "[t]o state a valid Rule 10b-5 claim, a plaintiff must allege that the defendant (1) made a misstatement or omission, (2) of material fact, (3) with scienter, (4) in connection with the purchase or sale of securities, (5) upon which the plaintiff relied, and (6) that reliance proximately caused plaintiff's injuries." *In re Healthcare Compare Corp. Securities Litig.*, 75 F.3d 276, 281 (7th Cir. 1996). Defendants contend that Plaintiffs have failed to plead their securities fraud claim with sufficient particularity under federal law. The Court agrees.

With respect to this claim, Plaintiffs repeatedly—and erroneously—attempt to answer Defendants' arguments with references to standards that generically apply under Federal Rule of

Civil Procedure 12(b)(6). However, because Plaintiffs chose to allege that Defendants engaged in fraudulent conduct, this is not an ordinary claim subject to the generous notice pleading standards set forth in Fed. R. Civ. P. 8(a). Rather, fraud is a special matter that must be pleaded in accordance with the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). Rule 9(b) requires that the Plaintiffs plead "the who, what, when, where, and how: the first paragraph of any newspaper story" concerning the alleged fraud. *In re Healthcare Compare Corp. Securities Litig.*, 75 F.3d at 281 (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990)).

In addition, because Plaintiffs advanced a securities fraud claim, this is not just a standard federal fraud case that must be pleaded in accordance with Rule 9(b). Instead, the Private Securities Litigation Reform Act of 1995 ("PSLRA") requires that a plaintiff alleging a 10b-5 claim must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. §78(u)-4(b)(1) (2005). The PSLRA further provides in relevant part that, as to each misstatement or omission, the complaint must "state with particularity the facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* at 78(u)-4(b)(2). This is "the most salient feature of the PSLRA," and "a mere reasonable inference is insufficient to survive a motion to dismiss." *Ray v. Citigroup Global Mkts.*, No. 03 C 3157, 2004 WL 1794927, at *3 (N. D. Ill. Aug. 4, 2004) (citing *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 196 (1st Cir. 1999)). Scienter, the required state of mind for 10b-5 claims, is defined as "the intent to deceive, manipulate, or defraud," *Ernst & Ernst v. Hochfelder*, 425 U.S. 185,

194 (1976), or the "reckless disregard of the truth" of the matter asserted. *S.E.C. v. Jakubowski*, 150 F.3d 675, 681 (7th Cir. 1998). Given these governing standards, Plaintiffs' approach in their response to the motion to dismiss—in which they reference generic 12(b)(6) principles and often cite decades-old federal cases that predate the PSLRA—is seriously misplaced.[5]

As the basis of their 10b-5 claim, Plaintiffs have identified two purported omissions: (1) that Defendants "deliberately and intentionally withheld the actual year-end 2002 financial statements from the plaintiffs in order to purchase the 20% interest at a price less than what was fair . . ." (D.E. 1 at 5); and (2) that Defendants "deliberately and intentionally withheld and failed to disclose to the plaintiffs the possibility of the IPO in order to purchase the 20% interest from the plaintiffs for a value much less than it would have received from the IPO" (*id.* at 6).

The first problem with Plaintiffs' complaint concerns the PSLRA's requirement that specific facts be alleged that give rise to a strong inference of scienter. The only allegations in the complaint which directly address scienter are conclusory and are stated about "Defendants"

---

[5] Plaintiffs' citation of authority is generally inadequate. For example, Plaintiffs typically cite to cases without offering pin cites to those portions that they contend support their position. (*See, e.g.,* D.E. 7 at 4, 6, 7, 8, 10, 11, 12, 13.) Plaintiffs also cite a case ("*Santa Fe v. Glen*") without offering any publication reference or information about the court that rendered the decision or the year it issued. (*See* D.E. 7 at 6.) Such practices do not promote confidence that Plaintiffs' brief is the product of active research into the caselaw. This fear is reinforced by the fact that Plaintiffs often cite authority, often times from other circuits, that is quite old and that, more importantly, predates Congress's significant reforms in this area through the PSLRA. Should Plaintiffs decide to attempt to replead their federal securities claim, the Court respectfully requests that Plaintiffs brief any response to a subsequent motion to dismiss in the fashion that is typically employed by litigants in this courthouse. Furthermore, the Court requests that any future briefs please attempt to review and compile relevant Seventh Circuit precedent, instead of the pre-PSLRA cases, many from other circuits, that Plaintiffs typically offer. The Seventh Circuit has an extensive body of securities law precedent, and while guidance from other circuits can sometimes be helpful, significant guidance can be gained by a thorough review of Seventh Circuit law. If Plaintiffs intend to pursue seriously a federal securities claim, they should defend it with citations that promote the application of governing, binding precedent.

generally. (*See, e.g., id.* at 5-6 (¶¶ 25, 27-28).) These allegations are inadequate as a threshold matter because group pleading allegations do not suffice under the PSLRA to establish scienter on the part of each individual Defendant. *See, e.g., Chu v. Sabratek Corp.*, 100 F. Supp. 2d 827, 837 (N.D. Ill. 2000) (Castillo, J.); *see also Napier v. Bruce*, No. 02 C 8319, 2004 WL 1194747, at *6 (N.D. Ill. May 27, 2004).[6] Relatedly, with respect to scienter, a complaint must give sufficient reasons to believe that each specific defendant acted with a fraudulent intent with regard to any allegedly false statements or omissions. *See* 15 U.S.C. §78u-4(b)(2). Plaintiffs ignore this basic federal securities law principle, and instead improperly attempt to seek refuge in generic Rule 12(b)(6) concepts. *See, e.g.,* D.E. 7 at 5 ("The Defendants also assert that the Complaint does not allege that the Defendants knew of the possibility of the merger and IPO. As previously stated under Rule 12(b)(6), the Court must draw all reasonable inferences in the Plaintiff's favor."). In addition, and independently, Plaintiffs' averments are insufficient because they merely offer conclusory allegations of group knowledge. *See, e.g., Premier Capital Mgmt., LLC v. Cohen*, No. 02-5368, 2003 WL 21960357, at *5 (N.D.Ill. Aug.15, 2003) (Gottschall, J.) ("Conclusory allegations that defendants acted with knowledge that the representations were

---

[6] The majority (perhaps the vast majority) of federal courts interpreting the PSLRA have found that group pleading allegations are inadequate to establish the requisite scienter for each individual defendant. The Fifth Circuit recently so held in *Southland Sec. Corp. v. Inspire Insurance Solutions, Inc.*, 365 F.3d 353, 365 (5th Cir. 2004). The Fifth Circuit's holding is consistent with the holdings of many district courts that have reached the same conclusion. *See, e.g., Ong ex rel. Ong IRA*, No. 03 C 4142, 2004 WL 2534615, at *37 (N.D. Ill. Sept. 27, 2004) (Pallmeyer, J.); *In re Cross Media Mktg. Corp. Sec. Litig.*, No. 02-5462, 2004 WL 842350, at *6 (S.D.N.Y. April 20, 2004) (Patterson, J.); *D.E. & J. Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719, 742 (E.D. Mich. 2003) (Rosen, J.); *Johnson v. Tellabs, Inc.*, 262 F. Supp. 2d 937, 955 (N.D. Ill. 2003) (St. Eve., J.); *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 553 (D. Del. 2002) (Sleet, J.); *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 142 F. Supp. 2d 589, 618 (D. N.J. 2001) (Walls, J.); *In re Sunbeam Sec. Litig.*, 89 F. Supp. 2d 1326, 1341 (S.D. Fla. 1999) (Middlebrooks, J.).

false and misleading do not satisfy the PSLRA's pleading requirements.").

Moreover, the complaint fails to provide from *whom* the allegations of differences in the financial statements came. For guidance on this point, the Court turns to requirements for disclosing confidential witnesses in cases involving the PSLRA. Generally, two standards exist for citing confidential sources in a complaint. Some courts generally require parties to include the names of their confidential sources in the complaint. *See, e.g., In re Silicon Graphics Inc. Sec. Litig.*, 970 F. Supp. 746, 763 (N.D. Cal. 1997); *In re Aetna Inc. Sec. Litig.*, No. CIV. A. MDL 1219, 1999 WL 354527, at *4 (E.D. Pa. May 26, 1999). Both the Second and Fifth Circuits, however, have held that confidential sources need not be specifically named "so long as they are identified through general descriptions in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source as described would possess the information pleaded to support the allegations of false or misleading statements made on information and belief . . . ." *Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249, 259 (5th Cir. 2005); *see also Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000) (stating that "even if personal sources must be identified, there is no requirement that they be named, provided they are described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged").

Under either standard, some level of heightened identification is required, and Plaintiffs do not meet that standard. First, there is no indication that the unnamed source(s) Plaintiffs vaguely allude to are confidential or should otherwise not be disclosed. Furthermore, Plaintiffs' reference to "various parties" does not provide sufficient basis to believe that any person(s) would likely have the relevant information, as opposed to merely offering speculation.

Therefore, the allegations regarding any supposed discrepancies between the preliminary financial statements and the final statements fail on this separate ground as well.

In addition, Plaintiffs' Complaint is deficient with respect to the issue of scienter in terms of the substance of their allegations, over and above the group pleading defects. The Court will assume that Plaintiffs may use "motive and opportunity" or circumstantial evidence to establish scienter under the PSLRA, as long as the allegations support a strong inference that the defendants acted recklessly or knowingly when they made the alleged misrepresentations or omissions. *See 766347 Ontario Ltd. v. Zurich Capital Mkts., Inc.*, 249 F. Supp. 2d 974, 987 (N.D. Ill. 2003); *see also Zurich Capital Mkts, Inc. v. Coglianese*, No. 03 C 7960, 2004 WL 2191596, at *13 (N.D. Ill. Sept. 23, 2004). As best the Court can discern, Defendants' "motive" for committing securities fraud, as alleged by Plaintiffs, is that Defendants could make a better deal, and thus enjoy more profits, by not disclosing the final financial statements or the possibility of an IPO. (D.E. 1 at 5.) In effect, Plaintiffs allege that Defendants' motive is little more than that they are officers of public companies. These are the type of boilerplate allegations that courts routinely deem inadequate under the heightened pleading standards for federal securities fraud claims under the PSLRA. *See, e.g., Premier*, 2003 WL 21960357, at *5 (rejecting as insufficient under the PSLRA allegation that defendant officers committed fraud because of alleged "nee[d] to alleviate the corporation's extreme financial difficulties" prompted by misappropriation and squandering of company money, and defendants' desire to "loot the corporation for their personal gain"); *Chu*, 100 F. Supp. 2d at 837 (rejecting as insufficient allegation that defendants committed fraud so as to enhance their respective "status as an officer or director" of company); *In re Allscripts, Inc. Secs. Litig.*, No. 00-6796, 2001 WL 743411, at

*11 (N.D. Ill. Jun. 29, 2001) (Kocoras, J.) (rejecting as insufficient allegations that defendant officers committed fraud so as to capitalize on their "incentive-based" salaries and benefits packages and so as to inflate stock price to facilitate corporate acquisition); *accord, e.g., San Leadro Emergency Med. Group Profit Sharing Plan v. Phillip Morris Corp.*, 75 F.3d 801, 813-14 (2d Cir. 1996) (finding insufficient allegation that defendants committed fraud so as to "maximize the marketability of the $700 million of debt securities . . . and to minimize the interest rate on those securities"); *In re Cross Media Mktg. Corp. Sec. Litig.*, 314 F. Supp. 2d 256, 265 (S.D.N.Y. 2004) (Patterson, J.) (finding insufficient allegation that defendants committed fraud "to raise additional capital in private placement [offering]" and to "maintain compliance with financial covenants of a company loan agreement")."[7]

---

[7] Plaintiffs contend that they should not have to make specific allegations, but instead should just move on to discovery. (D.E. 7 at 5-6 ("It is important to note that at this pleading stage of this litigation . . . a complaint should not be dismissed without allowing the plaintiff to conduct discovery of said information wherein the facts alleged provide grounds for recovery.").) This assertion is seriously misplaced. The PSLRA presumptively requires a stay of discovery, a requirement that precedent teaches was imposed by Congress specifically to deter the practice that Plaintiffs suggest. *See* 15 U.S.C. §78u-4(b)(3)(B) ("In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party."); *see also SC Cowen Sec. Corp. v. United States District Court*, 189 F.3d 909, 912 (9th Cir. 1999) (discussing PSLRA stay of discovery provision and collecting legislative history from Senate and House leaders discussing need for such a provision); *Singer v. Nicor*, No. 02 C 5168, 2003 WL 22013905, at *1 (N.D. Ill. Apr. 23, 2003) ("The goal of the PSLRA's discovery stay is to prevent the unnecessary imposition of discovery costs in both money and time on defendants in securities fraud cases, given that such costs often coerce settlements by innocent parties."); *Sarantakis v. Gruttaduria*, No. 02 C 1609, 2002 WL 1803750, at *1 (N.D. Ill. Aug. 5, 2002) (automatic stay was designed "to avoid the situation in which a plaintiff sues without possessing the requisite information to satisfy the PSLRA's heightened pleading requirements, then uses discovery to acquire that information and resuscitate a complaint that would otherwise be dismissed."). The Court notes that the only support Plaintiffs offer for their "just open discovery" approach is a single case from the Second Circuit that is nearly forty years old (and which is cited, as is usually the case in Plaintiffs' briefing, without any pin cite). While the Court respectfully denies Defendants'

Plaintiffs' complaint also fails various portions of Rule 9(b)'s "who, what, when, where, and how" test. For example, the complaint does not adequately allege *what* the differences in the financials supposedly were or why those differences are material. Plaintiffs contend that the audited financials revealed that "said entity" (an apparent reference to the undefined "the Company" (D.E. 1 at 4)) "made in excess of 14 million dollars in profits," but Plaintiffs do not explain how this figure differed from the profit figures they had, or what period the alleged profit covered.

Nor does the Complaint sufficiently assert *when* the differences arose or *when* information concerning the merger and resulting IPO should have or could have been disseminated to Plaintiffs—the complaint does not aver when the respective omissions took place. *See Cook v. Exelon Corp.*, No. 01-7406, 2002 WL 31133274, at *5 (N.D. Ill. Sept.26, 2002) (Kocoras, J.) ("Providing broad time ranges when misrepresentations were made is not sufficient to satisfy Rule 9(b)."); *see also Clark v. Robert W. Baird Co.*, 142 F. Supp. 2d 1065, 1072 (N.D. Ill. 2001) (Bucklo, J.) (stating that "it is not enough to merely allege a period of months or years, or the duration of the activity" to satisfy Rule 9(b)). According to Plaintiffs, Hallberg's employment terminated in March 2003 (D.E. 1 at 3), and he became aware of the merger in November 2003 (*id.* at 4). However, there is no indication in the complaint as to when Plaintiffs exercised their Put Right (other than "[s]ubsequent to such termination of employment" (*id.* at 3)), when the parties reached a settlement, or when the merger negotiations arose. Thus,

---

request for sanctions, it is difficult to ignore the fact that Plaintiffs have cited only a decades-old case from another circuit, when there is a federal statute that speaks directly to this issue and when numerous recent cases in this circuit and district and elsewhere discuss the impact of the PSLRA, including, for example, its stay of discovery provision and its heightened pleading standards for securities claims.

even assuming that a duty to disclose existed, there is no reason to think Defendants had any potential merger or IPO to disclose to Plaintiffs before the two sides reached an agreement and executed a settlement agreement.[8]

For the foregoing reasons, this Court grants Defendants' motion and dismisses without prejudice Plaintiffs' securities claim.[9]

B. The State Law Claims

The only other counts in Plaintiffs' complaint are claims based on state law, over which this court may assert jurisdiction as a discretionary matter pursuant to 28 U.S.C. § 1367(a). Precedent instructs that the practice in this circuit is not to exercise supplemental jurisdiction

---

[8] With respect to the "failure to disclose the merger" issue, Plaintiffs allude to the "special facts" doctrine adopted in many circuits, including the Seventh Circuit. Under this doctrine, "[c]lose corporations buying their own stock, like knowledgeable insiders of closely held firms buying from outsiders, have a fiduciary duty to disclose material facts." *Jordan v. Duff and Phelps, Inc.*, 815 F.2d 429, 435 (7th Cir. 1987). To the extent this doctrine is of use to Plaintiffs, it would appear to be of limited assistance (even putting aside all of the other defects in Plaintiffs' securities claim), as it appears that AAGA was the only Defendant that purchased Plaintiffs' interest in Insure One (D.E. 1 at 2).

[9] The Court does not need to presently resolve, but likely would be called upon to resolve if the case were to go forward, whether Plaintiffs' disputed interests involved "securities." In Plaintiffs' response to Defendants' motion to dismiss, Plaintiffs do not appear to seriously contend that their interests were in the form of "stock" during the relevant time period. Instead, Plaintiffs appear to contend that their interests qualified as "securities" because they were "investment contracts." In *SEC v. W.J. Howey Co.*, 320 U.S. 293 (1946), the Supreme Court provided a framework for determining when investment contracts are subject to federal securities law. Under the *Howey* test, agreements are investment contracts (and therefore "securities") if they involve (1) a monetary investment (2) in a common enterprise (3) with profits to come solely from the efforts of others. *See id.* at 301. The third element is at issue here. Given Hallberg's previous position, as a director, president, and manager in Insure One, the Court would have to assess whether Plaintiffs had enough control via Hallberg to take this out of the investment contract category. Defendants cite caselaw that suggests that Plaintiffs' interest might not qualify as an "investment contract"—*see, e.g., Robinson v. Glynn*, 349 F.3d 166, 171-172 (4th Cir. 2003)—but that assessment likely could only reasonably be made at the conclusion of discovery.

13

over such claims where, as here, all federal jurisdictional claims have been dismissed and only state law claims remain. *See, e.g., Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999). The Court respectfully declines to exercise supplemental jurisdiction over Plaintiffs' state law claims at this time and they are also dismissed without prejudice. *See, e.g., Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 728 (7th Cir. 1998). If Plaintiffs desire to pursue their various state law claims, they should either do so in the courts of the State of Illinois or file an amended complaint containing a viable cause of action under federal law.[10]

---

[10] In their Complaint, Plaintiffs assert in conclusory terms that there is jurisdiction pursuant to 28 U.S.C. § 1332, the diversity jurisdiction statute. (D.E. 1 at 3.) Notwithstanding this assertion, Plaintiffs do not in their Complaint discharge Plaintiffs' burden of showing that diversity jurisdiction would be appropriate. *See, e.g., Pollution Control Indus. of Am., Inc. v. Van Gundy*, 21 F.3d 152, 155 (7th Cir. 1994). For example, Plaintiffs all appear, as alleged, to be citizens of the State of Illinois. (D.E. 1 at 1-2.) Defendant "Insure One Independent Insurance Agency LLC," is described without more as "an Illinois limited liability company." (D.E. 1 at 2.) Of course, it is hornbook law that there must be complete diversity between all plaintiffs and all defendants here. *See, e.g., Indiana Gas Co., Inc. v. Home Ins. Co.*, 141 F.3d 314, 318 (7th Cir. 1998) (collecting cases). Plaintiffs do not offer any further information about the members of the LLC, but the Complaint as alleged certainly does not discharge Plaintiffs' burden of giving this Court reason to believe that diversity jurisdiction is well-founded.

14

IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss the federal claim is granted. Plaintiffs' 10b-5 claim is dismissed without prejudice. If Plaintiffs choose, they may attempt to replead the federal claim within twenty days of this order. Plaintiffs' state law claims are also dismissed without prejudice. If Plaintiffs elect not to attempt to replead, Plaintiffs may pursue their state law claims, if they choose, in an appropriate forum such as the Illinois courts. So Ordered.

_____
Mark Filip
United States District Judge
Northern District of Illinois

Dated: March 8, 2005